DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Steven Jefferson, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant, Steven Jefferson, is a Special Investigator for the Department of Housing and Urban Development. As part of his employment, Jefferson was issued a Maryland driver's license in the name of Steven Patrick Johnson with a different social security number, as well as a matching Social Security Card. In 2006, Jefferson and his wife, Shawna Jefferson, were experiencing marital problems. Shawna had a daughter, Mya, from a previous marriage who was 16 years old in 2006. The couple eventually terminated their marriage in divorce. In the initial proceedings, Shawna retained Attorney Michael Creveling and his firm to prepare a civil protection order for her. Another attorney represented Mrs. Jefferson through the conclusion of the divorce proceedings. *Page 2 
 {¶ 3} At some point in 2006, Shawna discovered Jefferson's Maryland identification cards which contained his picture and signature but the name of Steven Patrick Johnson. Shawna turned these cards over to her attorney, Creveling, for further investigation. The parties dispute whether Shawna also told Creveling that Jefferson had recently held a gun to Mya's head. Upon receipt of these identification cards, Creveling contacted Assistant U.S. Attorney Thomas Bauer. Creveling informed Bauer about the identification cards. Jefferson also contends that Creveling informed Bauer that during a heated domestic dispute, Jefferson held a gun to Shawna's daughter's head. Because Creveling thought that Jefferson was employed by the IRS at the time, the matter was referred by the U.S. Attorney's office to the Treasury Inspector General for Tax Administration. Agent Val DeGiovanni Bowden was assigned to investigate this matter. The record reflects that Bowden interviewed Bauer on May 16, 2006.
 {¶ 4} As a result of the information Creveling turned over to the Assistant U.S. Attorney, Jefferson was subject to investigation. Following the completion of the investigation, Jefferson obtained a copy of the investigative file.
 {¶ 5} On May 1, 2007, Jefferson filed a complaint alleging slander against Appellees, Michael Creveling and his employer, Creveling 
Creveling (collectively referred to as "Creveling"). Specifically, Jefferson alleged that Creveling told Assistant U.S. Attorney Thomas Bauer that "during a domestic dispute [Jefferson] held a gun to [his wife's] daughter's head." On June 7, 2007, Creveling filed a motion to dismiss to which they attached a letter dated June 5, 2007 from Bauer. In the letter, Bauer stated that counsel for Creveling contacted him concerning Jefferson's complaint and that the only conversation he had with Creveling concerned "several pieces of identification [he had obtained] that he feared might be illegal." On June 15, 2007, *Page 3 
Jefferson filed a brief in opposition to the motion to dismiss. The trial court denied Creveling's motion to dismiss on October 17, 2007.
 {¶ 6} On October 25, 2007, Creveling filed a motion for summary judgment. Jefferson obtained an extension of time to respond to Creveling's summary judgment motion. Pursuant to a motion to stay filed by Creveling, on November 13, 2007, the trial court issued an order staying all discovery propounded on Creveling until after the court ruled on the motion for summary judgment. On December 6, 2007, Jefferson filed a motion to strike the exhibits attached to Creveling's motion as well as a combined brief in opposition to the motion for summary judgment and a Civ. R. 56(F) motion requesting that the court order additional discovery. Jefferson sought to depose Creveling and/or Bauer, among others. On December 10, 2007, Jefferson supplemented his opposition to the summary judgment motion with an affidavit from Shawna Jefferson. After receiving Bauer's February 21, 2008 sworn statement in which he made no reference to the defamation claimed by Jefferson and specifically stated that he did not recall having any other contact with Creveling beyond the exchange of the identification cards, on February 29, 2008, Jefferson voluntarily dismissed his case pursuant to Civ. R. 41(A)(1)(a), without prejudice.
 {¶ 7} On March 5, 2008, Creveling filed a motion for sanctions in which they sought $11,640 in attorney's fees and $390 in litigation costs based on Jefferson and his attorneys' frivolous conduct. In their motion, Creveling indicated that not only did Jefferson and his attorneys fail to investigate their slanderous allegations before filing the suit, but even more, they failed to investigate these allegations in the several months following their receipt of the June 5, 2007 letter from Bauer attached to Creveling's June 7, 2007 motion to dismiss. On April 1, 2008, the trial court held a hearing on the motion. *Page 4 
 {¶ 8} The trial court issued a decision on April 10, 2008, ordering Jefferson and his attorneys, Colin Sammon and Thomas Robenalt, to each pay $2633.33 for their frivolous conduct. On April 15, 2008, Jefferson filed a motion requesting that the trial court issue findings of fact and conclusions of law. Thereafter, on April 21, 2008, Jefferson filed a motion for relief from judgment. The trial court denied Jefferson's request for findings of fact and conclusions of law on April 29, 2008. On May 9, 2008, Jefferson filed a timely notice of appeal. Jefferson has raised four assignments of error for our review. We have combined a few of Jefferson's assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN FINDING THAT [JEFFERSON] ENGAGED IN FRIVOLOUS CONDUCT PURSUANT TO R.C. 2323.51 BECAUSE THE RULING WAS NOT SUPPORTED BY COMPETENT CREDIBLE EVIDENCE."
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S FINDING THAT [JEFFERSON] PROSECUTED A CASE AGAINST [CREVELING] THAT WAS NOT WARRANTED UNDER EXISTING LAW AND COULD NOT BE SUPPORTED BY A GOOD FAITH RELIANCE ON HEARSAY EVIDENCE INCLUDED IN THE INVESTIGATIVE REPORT AND THAT THE ACTION WAS LACKING PROOF AND BECAME FRIVOLOUS IS ERRONEOUS, MISAPPLIES THE FACTS, AND CONFUSES THE PROPER STANDARD UNDER A RC 2323.51
MOTION."
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING [CREVELING'S] MOTION FOR ATTORNEY'S FEES AND LITIGATION COSTS."
 {¶ 9} In his first and third assignments of error, Jefferson argues that the trial court abused its discretion in granting Creveling's motion for attorney's fees and in finding that Jefferson engaged in frivolous conduct because the ruling was not supported by competent, *Page 5 
credible evidence. In his second assignment of error, Jefferson asserts that the trial court's finding that (1) he prosecuted a case against Creveling that was not warranted under existing law and could not be supported by a good faith reliance on hearsay evidence included in the investigative report and (2) that the action was lacking proof and became frivolous, is erroneous and reflects a misapplication of facts and the proper standard of review under R.C. 2323.51. We disagree.
 {¶ 10} Pursuant to R.C. 2323.51, a party adversely affected by frivolous conduct may file a motion for an award of court costs, attorney fees and other reasonable expenses incurred in connection with the action. "Conduct" is defined under R.C. 2323.51(a) as
 "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action[.]"
 {¶ 11} R.C. 2323.51(A)(2)(a), provides that damages for frivolous conduct may be awarded under any of the following conditions:
 "(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
 "(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
 "(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
 "(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief." *Page 6 
 {¶ 12} In S S Computer Systems, Inc. v. Peng, 9th Dist. No. 20889, 2002-Ohio-2905, at ¶ 9, this Court held that "[a]ppellate review of a trial court's award of attorney's fees for frivolous conduct pursuant to R.C. 2323.51 is [reviewed] under the abuse of discretion standard, but the trial court's factual findings supporting a conclusion that frivolous conduct occurred will not be overturned if they are supported by competent, credible evidence." An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621.
 {¶ 13} Jefferson first argues that the trial court's denial of Creveling's motion to dismiss was an implicit finding that the action had merit. Contrary to Jefferson's assertions, the record reflects that the trial court denied the motion because the motion contained materials outside the pleadings that failed to meet the evidentiary standard required in a Civ. R. 56 motion. Ignoring Baurer's letter, presuming all factual allegations set forth in the complaint were true and construing all reasonable inferences in favor of Jefferson, the trial court could not find that Jefferson could prove no set of facts that would entitle him to relief. See Royce v. Smith (1981), 68 Ohio St.2d 106, 108;Petrey v. Simon (1983), 4 Ohio St.3d 154, 156.
 {¶ 14} Jefferson contends that the trial court applied the wrong standard when it held that "from a review of the evidence and the exhibits presented, that Plaintiff and his counsel prosecuted a case against the Defendants that was not warranted under existing law andcould not be supported by a good faith reliance on hearsay evidenceincluded in an investigative report" (Emphasis added.) He asserts that the proper standard, as set forth by the First District Court of Appeals in Riston v. Butler, 149 Ohio App.3d 390, 2002-Ohio-2308, at ¶ 30, is whether *Page 7 
it is "absolutely clear under the existing law that no reasonable lawyer could argue the claim." (Internal citations and quotations omitted.)
 {¶ 15} The trial court's decision reflects that it stated the correct standard of review regarding a determination of whether a claim itselfis frivolous which "is whether no reasonable lawyer would have brought the action in light of the existing law." Orbit Electronics, Inc. v.Helm Instrument Co., 167 Ohio App.3d 301, 2006-Ohio-2317, at ¶ 49, citing Riston, supra, at ¶ 31. When the court held that "[Jefferson] and his counsel prosecuted a case against the Defendants that was notwarranted under existing law and could not be supported by a good faithreliance on hearsay evidence included in an investigative report, the court was referring to the definition of "frivolous" set forth in section R.C. 2323.51(A)(2)(a)(ii). Section (ii) provides, in part, that damages for frivolous conduct can be provided when the conduct of a party to a civil action "is not warranted under existing law[.]"
 {¶ 16} We review a trial court's finding pursuant to R.C. 2323.51(A)(2)(a)(ii) de novo, as purely a matter of law, "`peculiarly within the competence of an appellate court.'" Kozar v. Bio-MedicalApplications of Ohio, Inc., 9th Dist. No. 21949, 2004-Ohio-4963, at ¶ 16, quoting Lorain v. Elbert (Apr. 22, 1998), 9th Dist. No. 97CA006747. An attorney's ignorance of the law or failure to investigate the law is not deemed objectively reasonable. Kozar, at ¶ 17, citingRiston, at ¶ 26. Further, the Ohio Supreme Court has held that:
 "When a trial court has determined that reasonable inquiry by a party's counsel of record should reveal the inadequacy of a claim, a finding that the counsel of record has engaged in frivolous conduct is justified, as is an award, made within the statutory guidelines, to any party adversely affected by the frivolous conduct." Ron Scheiderer Assoc. v. London
(1998), 81 Ohio St.3d 94, 97-98. *Page 8 
 {¶ 17} A review of the record reflects that the trial court's determination that Jefferson's conduct was frivolous was supported by competent, credible evidence. Reasonable inquiry by Jefferson's counsel would have revealed the inadequacy of his claim.
 {¶ 18} To establish his defamation claim, Jefferson had to prove the following four elements:
 "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." (Internal citations and quotations omitted.) Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591, 601.
 {¶ 19} In his complaint, Jefferson alleged that Creveling told Bauer that "during a domestic dispute [Jefferson] held a gun to [his wife's] daughter's head." In the June 5, 2007 letter, Bauer stated that his only interaction with Creveling was when Creveling turned over two pieces of identification to him. In his July 13, 2007 supplement to his motion to dismiss, Creveling denied making any statement to Bauer.
 {¶ 20} When he filed the complaint in May of 2007, Jefferson may have believed that the action was appropriate. However, he was quickly apprised through the June 7, 2007 filing of Bauer's letter and later, through Creveling's July 13, 2007 motion that he needed to further investigate the allegations. At that point, he had no evidence of either the alleged defamer making the statement or the third party receiving the statement. Jefferson failed to reasonably investigate the claim. Despite Creveling's encouragement that Jefferson's attorneys talk with Bauer, they did not notice his deposition or serve him with a subpoena. The record reflects that Jefferson failed to notice his deposition until January of 2008. Jefferson continued to prosecute the case for several months without specific evidence to support his claims. *Page 9 
 {¶ 21} Jefferson contends that he could not simply serve Bauer with a subpoena. He asserts that "the US Attorney's Office blocked a subpoena for a deposition and only allowed Bauer to give a written sworn statement." In support of this assertion, he cites his Brief in Opposition to Motion for Attorney's Fees in which he argued, without citation, that "the US Attorney's Office blocked a subpoena for a deposition and only allowed Bauer to give a written sworn statement." Jefferson has cited no evidence to support this assertion.
 {¶ 22} He claims that he also wanted to depose Creveling but that the trial court issued an order preventing him from propounding any discovery on Creveling until after it ruled on the motion for summary judgment. The record reflects that the trial court issued this order on November 13, 2007 after Creveling filed a motion to stay discovery. The trial court's order was meant to prevent Creveling from suffering unnecessary expenses responding to interrogatories. This order in no way prevented Jefferson from noticing Bauer's deposition or obtaining an affidavit from Bauer to support or refute his claim.
 {¶ 23} Moreover, even assuming Creveling made this statement, Creveling was immune from suit because such a statement regarding a crime involving a minor victim would have been privileged as Creveling would have had a duty to report the crime.
 {¶ 24} In Hahn v. Kotten (1975), 43 Ohio St.2d 237, 244, the Supreme Court discussed the nature of a qualified privilege as follows:
 "`A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.'" Hahn v. Kotten (1975), 43 Ohio St.2d 237, 244, quoting 50 American Jurisprudence 2d 698, Libel and Slander, section 195. *Page 10 
 {¶ 25} As an attorney, Creveling would have had a duty to report a gun incident involving a minor. See R.C. 2921.22 ("Reporting felony; medical personnel to report gunshot, stabbing, and burn injuries and suspected domestic violence"); Kelly v. Accountancy Bd. of Ohio (1993),88 Ohio App.3d 453, 459-460 (finding that the phrase "disclosure of information," contained in R.C. 2921.22(G), which is the statute that protects an individual who discloses information that a felony has been or is being committed to law enforcement officers from liability or recrimination in the event that the disclosure results in a breach of privilege or confidence, is "not be limited solely to notifying authorities that a felony has occurred; rather, the phrase could encompass a range of disclosure acts reasonably related to the reporting of a felony, including informing the IRS of an alleged tax fraud and providing it with documentation aimed at substantiating such a claim").
 {¶ 26} Once the defendant establishes the defense of qualified privilege, the plaintiff may not recover for defamation unless he can present clear and convincing evidence that the defamatory statement was made with actual malice. Evely v. Carlon Co. (1983), 4 Ohio St.3d 163,165. "In a qualified privilege case, `actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." Jacobs v. Frank
(1991), 60 Ohio St.3d 111, 116.
 {¶ 27} Here, even if the statement had been made, letters from Jefferson's ex-wife and her daughter which the women hand wrote prior to the filing of this lawsuit, eliminate any possible claim of actual malice. In the letters, both women stated that Jefferson had a gun in his hand during a domestic dispute. Consequently, these letters establish that the alleged defamatory statement was, at least in large part, true, and Creveling would have been justified in relying on their statements. *Page 11 
 {¶ 28} Jefferson also contests the trial court's finding that the case "became frivolous" on June 6, 2007, which was the date that Jefferson received notice that Bauer would not state that Creveling made the defamed statement to him. Jefferson argues that "a case cannot turn frivolous by the evidence not coming to light."
 {¶ 29} However, in Barbato v. Mercy Med. Ctr., 5th Dist. No. 2005 CA 00044, 2005-Ohio-5219, the Fifth District Court of Appeals found that the appellant's continued pursuit of a medical malpractice claim against a doctor about whom the appellant's medical expert provided no opinion, constituted frivolous conduct. In that case, the court found that the complaint against one of the doctors became frivolous after the appellant's medical expert provided testimony.
 {¶ 30} Barbato, like the within matter, involved a unique set of facts. We recognize that attorneys have a duty to abide by their client's decisions concerning the objectives of their representation. Prof.Cond.R. 1.2. However, this duty must be balanced with the duty to timely and adequately investigate claims before proceeding through months of litigation.
 {¶ 31} As we find that the trial court's decision that Jefferson engaged in frivolous conduct was supported by competent, credible evidence, that the trial court applied the proper standard and that the trial court did not abuse its discretion in granting Creveling's motion for attorney's fees, we overrule Jefferson's first, second and third assignments of error.
 ASSIGNMENT OF ERROR IV "THE TRIAL COURT'S AWARD OF 7,900.00 IN COSTS AND ATTORNEY'S FEES WAS ERRONEOUS IN THAT IT WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE."
 {¶ 32} In Jefferson's fourth assignment of error, he argues that the trial court's award of attorney's fees was not supported by competent, credible evidence. We disagree. *Page 12 
 {¶ 33} This Court held that "[a]ppellate review of a trial court's award of attorney's fees for frivolous conduct pursuant to R.C. 2323.51
is [reviewed] under the abuse of discretion standard[.]" S S ComputerSystems, Inc., supra, at ¶ 9. "The burden of establishing that a party incurred reasonable attorney fees because of the opposing party's frivolous conduct falls upon the moving party." Grine v. SylvaniaSchools Bd. of Edn., 6th Dist. No. L-06-1314, 2008-Ohio-1562, at ¶ 65. citing In re Verbeck's Estate (1962), 173 Ohio St. 557, 559. The Ohio Rules of Professional Conduct set forth the following factors that the trial court should apply in determining whether attorney's fees are reasonable:
 "`(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; (8) whether the fee is fixed or contingent.'" Grine, supra, at ¶ 65, quoting Ohio Rules of Professional Conduct 1.5.
 {¶ 34} Attorney Gerald Glinsek testified at the hearing as to the reasonableness of attorney fees:
 "Q: Mr. Glinsek, you are board certified to practice law in the State of Ohio?
 "A: I am.
 "Q: And you have been [practicing] for 40-some years?
 "A: Yes.
 "Q: I'm going to hand you what has been marked as Defendant's Exhibit 3. You've reviewed the file in this case, as well as Defendant's Exhibit 3, which is the time sheet. Is that correct?
 "A: Yes, I have. *Page 13 
 "Q: And do you find the charges contained in the time sheet which you have reviewed to be necessary and ordinary for the defense in this type of a defamation suit?
 "A: I do.
 "Q: And do you consider the rate of $200 to be normal and under a community standard of reasonableness?
 "A: It is."
 {¶ 35} Michael Creveling also testified regarding the reasonableness of the attorney's fees. Here, Creveling presented testimony from two practicing attorneys regarding the reasonableness of the attorney fees. Jefferson failed to refute this testimony with any witnesses.
 {¶ 36} Jefferson argues that Glinsek was not a credible expert witness because he did not review every paper in the entire case file, had not defended a civil case in the past five years, had never filed a defamation case and did not read any of the motions. However, Jefferson cites no authority to support his contention that an expert witness testifying regarding the reasonableness of attorney's fees must review every paper in a case file or have recently represented a party in the same capacity.
 {¶ 37} "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." State v.Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. See, also, App. R. 16(A)(7). "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Kremer v. Cox (1996), 114 Ohio App.3d 41, 60.
 {¶ 38} This Court may disregard arguments if the appellant fails to identify the relevant portions of the record from which the errors are based. See App. R. 12(A)(2). See, also, Smith v. Akron Dept. of PublicHealth, 9th Dist. No. 21103, 2003-Ohio-93, at ¶ 28. An appellant bears the *Page 14 
burden of affirmatively demonstrating the error on appeal, and substantiating his or her arguments in support. Angle v. Western ReserveMut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at *1; Frecska v.Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at *2. See, also, App. R. 16(A)(7) and Loc. R. 7(A)(6). As Jefferson's argument fails to comply with the foregoing appellate and local rule requirements, it fails for this additional reason.
 {¶ 39} Moreover, the record reflects that Glinsek more than adequately reviewed the file in preparation for his testimony. Glinsek testified that in preparation for his testimony, he
 "reviewed [Creveling's attorney's] time sheet, compared it with what he showed me on the documents that he's prepared for the case and the transcripts, and I found that the time that he has charged for the work in the case is reasonable and to community standards."
 {¶ 40} This Court will uphold the trial court's finding of fact so long as there is some competent, credible evidence to support the finding. Bender v. Bender (July 18, 2001), 9th Dist. No. 20157, at *2. Jefferson has failed to produce any expert testimony to dispute the sufficiency of the two practicing attorneys who testified regarding the reasonableness of the attorney's fees. As we find competent, credible evidence to support the trial court's award of attorney's fees for the 39.5 hours Creveling's attorney spent on the matter after Jefferson was put on notice that Bauer would not state that Creveling made the defamed statement to him, we overrule Jefferson's fourth assignment of error.
 III. {¶ 41} Jefferson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed. *Page 15 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARLA MOORE FOR THE COURT
SLABY, J. WHITMORE, J. CONCUR *Page 1